IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORA JEANNE JONES,

    Plaintiff,

v.                                                                                                                    1:15-cv-00842-LF

NANCY A. BERRYHILL[1], Acting Commissioner
of the Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Lora Jeanne Jones's Motion to Reverse and Remand (Doc. 15), which was fully briefed August 29, 2016. Docs. 19, 21, 22. The parties consented to my entering final judgment in this case. Docs. 5, 7, 9. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinion of Dr. Scott R. Walker, a non-examining agency psychiatrist. I therefore GRANT Ms. Jones's motion and remand this case to the Commissioner for proceedings consistent with this opinion.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

**II.     Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Ms. Jones was born in 1974, completed two years of college, and worked in the past as a cashier, receptionist, and call center employee. AR 189, 193, 330.[4] Ms. Jones filed applications for disability insurance benefits and supplemental security income on January 18, 2012, alleging disability since May 1, 2009 due to post-traumatic stress disorder ("PTSD"), depression, anxiety, and attention deficit disorder ("ADD"). AR 169–74, 175–78, 192. The Social Security

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Documents 12-1 through 12-14 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than the CM/ECF document number and page.

Administration ("SSA") denied her claims initially on March 30, 2012. AR 108–11. The SSA denied her claims on reconsideration on September 24, 2012. AR 117–19, 120–23. Ms. Jones requested a hearing before an ALJ. AR 124–26. On June 12, 2013, ALJ Ben Willner held a hearing. AR 36–65. ALJ Willner issued his unfavorable decision on October 23, 2013. AR 17–35.

At step one, the ALJ found that Ms. Jones had not engaged in substantial, gainful activity since May 1, 2009. AR 22. Because Ms. Jones had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. *Id.* At step two, the ALJ found that Ms. Jones suffered from the following severe impairments: ADD, depression, anxiety disorder, and PTSD. *Id.* At step three, the ALJ found that none of Ms. Jones's impairments, alone or in combination, met or medically equaled a Listing. AR 22–24. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Jones's RFC. AR 24–29. The ALJ found that:

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to work that requires her to understand, remember, and carry out only simple instructions and make simple decisions, and working primarily with things rather than with people. She can attend, concentrat[e], maintain pace and persistence on this limited range of tasks for two (2) hours at a time before taking a normally scheduled break, and then returning to work, throughout the workday.

AR 24.

At step four, the ALJ concluded that Ms. Jones was unable to perform her past relevant work as a receptionist. AR 29. The ALJ found Ms. Jones not disabled at step five, concluding that she still could perform jobs that exist in significant numbers in the national economy, such as an addresser, warehouse checker, and bundle clerk in a laundry. AR 30.

Ms. Jones requested review by the Appeals Council, which, on February 26, 2015, denied the request. AR 9–16. Ms. Jones requested an extension of time to file her appeal. AR 4–7. The SSA granted Ms. Jones an additional 30 days from August 28, 2015 to file her appeal. AR 1–2. Ms. Jones timely appealed to this Court on September 22, 2015. Doc. 1.

**IV.     Ms. Jones's Claims**

Ms. Jones raises several arguments for reversing and remanding this case: (1) the ALJ erred by failing to incorporate portions of Dr. Walker's medical opinion into her RFC; (2) the ALJ impermissibly picked and chose from the limitations noted by consultative psychiatric examiner Dr. Hughson; (3) the ALJ failed to provide adequate reasons for rejecting the opinions of treating therapists Ortiz and Gallegos; (4) the ALJ failed to express the RFC in terms of work-related mental activities; (5) the ALJ failed to perform the required analysis under *Trimiar* for cases with low numbers of jobs in the national economy. Because I remand based on the ALJ's failure to adequately address the limitations noted in the opinion of Dr. Walker, I do not address the other alleged errors, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

**V.     The ALJ Erred by Failing to Either Incorporate, or Explain Why He Rejected, Limitations Noted in the Medical Report of Non-Examining State Agency Psychiatrist Dr. Scott Walker.**

Ms. Jones argues that the ALJ committed legal error by failing to incorporate, without explanation, several moderate limitations assessed by Dr. Scott Walker into her RFC. Doc. 15 at 12–14. The Commissioner argues that the ALJ is not required to incorporate or reject the limitations noted in Section I of Dr. Walker's Mental Residual Functional Capacity Assessment ("MRFCA"), as only Section III contains the doctor's actual "mental residual functional capacity

assessment." Doc. 19 at 16–17. For the reasons discussed below, I find that the ALJ committed legal error in assessing the opinion of Dr. Walker.

Although an ALJ need not discuss every piece of evidence, he or she is required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

The ALJ assigned "great weight" to the medical source opinion of Dr. Scott Walker, a non-examining state agency psychiatrist. AR 28. In Section I of his September 21, 2012 MRFCA, Dr. Walker found that Ms. Jones had the following limitations:

- Moderate limitation in the ability to carry out detailed instructions;
- Moderate limitation in the ability to maintain attention and concentration for extended periods;
- Moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Moderate limitation in the ability to sustain an ordinary routine without special supervision;
- Moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them;
- Moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- Moderate limitation in the ability to respond appropriately to changes in the work setting;

- Moderate limitation in the ability to set realistic goals or make plans independently of others.

AR 92–93.

In Section III of his MRFCA, Dr. Walker found that:

[C]laimant can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting.

AR 93.

The ALJ assessed Dr. Walker's opinion as follows:

[T]he opinion of Scott Walker, M.D., was fully consistent with the medical evidence . . . . Dr. Walker opined that the claimant was able to perform unskilled work. He fur[th]er opined that her ability to maintain social functioning and her ability to maintain concentration, persistence, or pace were moderately limited. Therefore the undersigned gave the opinion of . . . Dr. Walker great weight to the extent [it] is consistent with the residual functional capacity indicated herein.

AR 28 (internal citations omitted).

The ALJ found that Ms. Jones had the RFC to:

perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to work that requires her to understand, remember, and carry out only simple instructions and make simple decisions, and working primarily with things rather than people. She can attend, concentrate[e], maintain pace and persistence on this limited range of tasks for two (2) hours at a time before taking a normally scheduled break, and then returning to work, throughout the workday.

AR 24.

The Commissioner contends that the ALJ is not required to account for the limitations in Section I of Dr. Walker's MRFCA because Section I is not the doctor's RFC assessment. Doc. 19 at 16–17. The Commissioner argues that the ALJ need only account for the limitations noted in Section III of Dr. Walker's MRFCA. *Id.* at 17. For the reasons stated below, I find the Commissioner's arguments unpersuasive.

As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting nearly identical arguments, the Social Security Program Operations Manual System ("POMS"),

8

regulations, and case law require the ALJ to address all of Dr. Walker's findings, not just those in Section III. *See Silva v. Colvin*, 203 F. Supp. 3d 1153 at 1158–64 (D.N.M. 2016). Specifically, "findings of fact made by State agency . . . psychological consultants and other program physicians and psychologists become opinions at the administrative law judge . . . level[] of administrative review . . . and requires administrative law judges . . . to consider and evaluate these opinions when making a decision in a particular case." POMS § DI 24515.013.[5] Further, "[b]ecause State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR [§§] 404.1527(f) and 416.927(f) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges . . . are not bound by findings made by State agency . . . psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id.* And although ALJs also "must consider and evaluate" a program physician's or psychologist's Section III RFC, Section I findings are not exempt from this scrutiny. *See id.*

Social Security regulations also require ALJs to "consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . ." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "Evidence" includes "findings . . . made by State agency medical and psychological consultants and other program physicians and psychologists . . ., and opinions expressed by medical experts or psychological experts that we consult based on their

---

[5] SSR 96-6p, on which POMS § DI 24515.013 was based, was rescinded and replaced by SSR 17-2p on March 27, 2017. *See* https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-06-di-01.html. SSR 96-6p interpreted 20 C.F.R. §§ 404.1527 and 416.927, the regulations governing the evaluation of opinion evidence for claims filed before March 27, 2017.

9

review of the evidence in your case record." 20 C.F.R. §§ 404.1512(b)(1)(viii) (effective April 20, 2015 to March 26, 2017), 416.912(b)(1)(viii) (effective April 20, 2015 to March 26, 2017). Like the POMS, the regulations do not exempt the Section I findings from an ALJ's consideration and evaluation. *See id.*

Case law also requires ALJs to consider the entire MRFCA, not just the Section III findings. The Court has surveyed the cases from the Tenth Circuit that expressly address the distinction between Section I and Section III findings. Two cases, *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016) and *Sullivan v. Colvin*, 519 F. App'x 985 (10th Cir. 2013) (unpublished), arguably could be interpreted in the Commissioner's favor, but the others could not. *Compare Smith*, 821 F.3d at 1269 n.2[6] ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. . . . This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of residual functional capacity. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on residual functional capacity, not her notations of moderate limitations."), *and Sullivan*, 519 F. App'x at 989 (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the

---

[6] In *Smith*, the court held that the ALJ did not err in failing to repeat moderate nonexertional limitations from a medical opinion because the limitations were incorporated into the RFC. 821 F.3d at 1269. To the extent that *Smith* suggests that an ALJ may ignore a consulting psychologists Section I findings, that suggestion is inconsistent with the Tenth Circuit's earlier decisions in *Haga*, 482 F.3d at 1208 ("ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others"), and *Frantz*, 509 F.3d at 1302–03 ("ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by Dr. Garnand, a nonexamining physician, but rejecting others without discussion"). However, one panel of the court cannot overrule another, *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005), and earlier panel decisions control over later ones, *Storagecraft Tech. Corp. v. Kirby*, 744 F.3d 1183, 1191 n.2 (10th Cir. 2014).

10

Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 WL 3865856 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (unpublished) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III"), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) (unpublished) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC. The ALJ did so here . . . . And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (unpublished) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC). While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an

important caveat: the Section III findings must adequately account for the Section I findings. The case law therefore requires ALJs to consider all of the findings made in medical source opinions, including the Section I findings.

Thus, under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why he rejected the moderate limitations noted in Section I of Dr. Walker's MRFCA. *See also Jaramillo*, 576 F. App'x at 876 (10th Cir. 2014) ("moderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a VE"). The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Walker in the RFC assessment. *See Carver*, 600 F. App'x at 619 ("if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding"). If not, the Court must determine whether the ALJ adequately explained why he rejected the missing limitations.

As an initial matter, the Court finds that Dr. Walker's Section III summary fails to sufficiently account for the moderate limitations assessed in Section I. For example, Dr. Walker's Section III findings fail to describe the effect of the Section I finding that Ms. Jones had a "moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 92. Because Dr. Walker's Section III summary does not encapsulate this moderate limitation, the ALJ was required to discuss this limitation in his RFC findings. As the ALJ did not do so, remand is appropriate. In addition, Dr. Walker's Section I and Section III findings about Ms. Jones's ability to get along with

supervisors conflict. In Section I, Dr. Walker found that Ms. Jones had a "moderate limitation" in her ability "to accept instructions and respond appropriately to criticism from supervisors." AR 92. However, in Section III, without any narrative explanation, Dr. Walker found that Ms. Jones could "interact adequately with co-workers and supervisors." *Id.* Because Dr. Walker's Section III narrative does not incorporate his Section I finding of a moderate limitation, and because the ALJ failed to explain why he rejected this limitation, remand is required. *See Carver*, 600 F. App'x at 619.

The parties do not address each omitted limitation individually. The Court will not do so either, as remand is required given that the ALJ omitted at least two critical limitations from the RFC without adequate discussion.

First, the ALJ failed to either include in the RFC or explain why he rejected the moderate limitation Dr. Walker found in Ms. Jones's ability to interact with supervisors. In the RFC, the ALJ limited Ms. Jones to "working primarily with things rather than people." AR 24. However, this is not expressed as a work-related mental function and does not encompass the moderate limitation Dr. Walker found in Ms. Jones's ability to interact with supervisors. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo*, 576 F. App'x at 876 (quoting SSR 96-8p, 1996 WL 374184, at *6). A claimant's ability to interact with supervisors is a work-related mental ability which is critical to all work, and the ALJ must adequately address it in the

13

RFC.⁷  The ALJ's failure to address this basic work-related mental function in the RFC requires remand.

Second, the ALJ failed to adequately address Ms. Jones's limitation in her ability to complete a normal workday and workweek without interruptions, and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Walker found that Ms. Jones had a "moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 92. The ALJ did not point to any evidence contradicting the fact that Ms. Jones has a moderate impairment in this area. However, the ALJ failed to discuss why he rejected this limitation. The mental abilities needed for any job include "the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an

---

⁷ "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.") In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at *2.

unreasonable number and length of rest periods."  POMS § DI 25020.010,

http://policy.ssa.gov/poms.nsf/lnx/0425020010.  "These requirements are usually strict."  *Id.*

Because this ability is a general requirement for all jobs, the ALJ must address this limitation in

formulating Ms. Jones's RFC.  *See Bowers v. Astrue*, 271 F. App'x 731, 733–34 (10th Cir. 2008)

(unpublished) (noting that a moderate limitation in another ability required for all jobs—the

ability to respond appropriately to changes in a routine work setting—could decrease ability to

perform simple or unskilled work because it is a general work requirement).[8]  The ALJ failed to

adequately address this limitation, and remand is therefore appropriate.

      The Commissioner argues that the ALJ's RFC adequately captured Ms. Jones's mental

limitations because the ALJ limited her to unskilled work, which by definition "ordinarily

involve[s] dealing primarily with objects, rather than with data or people and generally

provide[s] substantial vocational opportunity for person[s] with solely mental impairments who

retain the capacity to meet the intellectual and emotional demands of such jobs on a sustained

basis."  Doc. 19 at 14 (quoting SSR 85-5, 1985 WL 56857, at *4).  This circular argument begs

the question of whether Ms. Jones can meet the demands of unskilled work on a sustained

basis—such as interacting appropriately with supervisors.  "A limitation to 'simple work' or

'unskilled jobs' is generally insufficient to address a claimant's mental impairments."  *Groberg*

*v. Astrue*, 505 F. App'x. 763, 770 (10th Cir. 2012) (unpublished) (citing *Chapo*, 682 F.3d at 1290

n.3).  "A moderate impairment is not the same as no impairment at all."  *Haga*, 482 F.3d at 1208.

Before concluding that Ms. Jones can do unskilled work, the ALJ must complete a mental

function-by-function assessment.  *See* note 7, *supra*.

---

[8] Dr. Walker also found that Ms. Jones had a "moderate limitation in the ability to respond appropriately to changes in the workplace setting."  AR 93.  The ALJ also failed to adopt, or state why he rejected this limitation.

As discussed above, the ALJ failed to sufficiently account for Ms. Jones's limitations in her ability to get along with supervisors, and in her ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. Under *Haga* and *Frantz*, the ALJ must either adopt these moderate limitations, or explain why he rejected them.

## VI. Conclusion

The ALJ erred in failing to incorporate several moderate limitations assessed by Dr. Walker into Ms. Jones's RFC, without explanation. I remand so that the ALJ can explain the evidentiary basis for his RFC determination and his reasons for rejecting portions of the uncontroverted evidence.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 15) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent